UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA THOMPSON,
VINCENZO PINO, and
OPAL STREET, LLC,

    Plaintiffs,

v.                                                                          Case No: 8:24-cv-349-KKM-AAS

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

    Defendant.
_____

# ORDER

Plaintiff Victoria Thompson, a Canadian citizen on an expired B-2 visa, moves for an order enjoining the Department of Homeland Security (DHS) from finding that she accrues unlawful presence in the United States while she litigates this action. Mot. for Preliminary Injunction (MPI) (Doc. 27).[1] Because Thompson does not have a substantial

---

[1] The plaintiffs—Thompson, her son Vincenzo Pino, and her business Opal Street, LLC—collectively move for a preliminary injunction, but their motion appears to seek relief only with respect to Thompson. *See* MPI at 16 (requesting that I "enjoin [DHS] from finding that [Thompson] accumulated unlawful presence while this litigation is pending"). I therefore refer to Thompson as the movant in this order. In any case, because Thompson has failed to establish a substantial likelihood of success on the merits, Pino, Thompson's dependent, *see* Am. Compl. (Doc. 24) ¶ 10, also lacks a substantial likelihood of success on the merits.

likelihood of success on the merits of her Administrative Procedure Act (APA) claim, I deny the motion.

## I. BACKGROUND

Thompson and her son Vincenzo Pino, Canadian citizens, entered the United States on March 9, 2023, with B-2 visas. MPI at 2; Def.'s Ex. 16 (Doc. 32-1). Thompson and Pino were entitled to stay until September 8, 2023. *Id.* Shortly before their visas expired, Thompson filed a Form I-129 petition to change her status to E-2 (treaty investor), *see* 8 U.S.C. § 1101(a)(15)(E)(ii), based on her investment in Opal Street LLC, a painting business, MPI at 2; *see* Def.'s Ex. 2 (Doc. 32-1). Pino, on the same day, filed a Form I-539 application to change his status to an E-2 dependent. MPI at 2–3.

At the time of filing, Thompson represented that she invested about $101,947 in Opal Street: a $44,900 franchise fee, $4,050 in initial expenses for an office lease, $5,000 for business consulting and formation fees, and the transfer of 2017 Range Rover Sport, worth $47,996.76, to be used as a company car. Def.'s Ex. 2 at 4, 6–7. Regarding the sources of her investment capital, Thompson submitted among other things a bill of sale for a 2012 Camry and documents demonstrating receipt of the sale funds; a gift transfer letter from a friend named Lucie Meloche; documentation evidencing Meloche's sale of real estate in 2020; and documentation regarding Meloche's 2022 transfer of funds to Thompson in two transactions, one for $31,198.81 USD and another for $45,000 USD.

2

*Id.* at 6; *see, e.g.*, Def.'s. Ex. 3 (Doc. 32-1); Def.'s Ex. 4 (Doc. 32-1); Def.'s Ex. 5 (Doc. 32-1).

On September 14, 2023, U.S. Citizenship and Immigration Services (USCIS) issued a Request for Evidence (RFE). Pl.'s Ex. 1. (Doc. 27-1). Among other things, USCIS requested additional evidence as to the source of the funds that Thompson invested in Opal Street. *Id.* at 3–4. USCIS asked Thompson to submit evidence documenting how Meloche transferred the funds from the home sale to the bank account from which she made gifts to Thompson. *Id.* at 4.

Thompson responded to the RFE on December 7, 2023, and provided documentation as to both "tranches" that Meloche used to transfer funds to Thompson. Def.'s Ex. 6 (Doc. 32-1). But on December 15, 2023, USCIS denied Thompson's petition, and shortly thereafter USCIS denied Pino's petition too. Pl.'s Ex. 2 (Doc. 27-1). As relevant here, USCIS concluded that Thompson's evidence remained insufficient to demonstrate that the "investment funds or assets were not obtained, directly or indirectly, through criminal activity." *Id.* at 3.

The plaintiffs initiated this action in February 2024, Compl. (Doc. 4), and USCIS reopened Thompson's petition a few months later. Pl.'s Ex. 3 (Doc. 27-1); *see* (Doc. 17) (staying action pending further administrative proceedings). USCIS issued a notice of intent to deny (NOID) and identified what it perceived to be the deficiencies in

3

Thompson's petition. Among other things, USCIS concluded that Thompson failed to properly source her investment funds and failed to prove that she invested a substantial amount of capital in Opal Street. Pl.'s Ex. 3 at 1–6, 9–10; *see* 8 U.S.C. § 1101(a)(15)(E)(ii) (requiring that an alien have invested, or be in the process of investing, a "substantial amount of capital"); 8 C.F.R. § 214.2(e)(14) (defining "substantial amount of capital"). In explaining what Thompson needed to prove as to the source of her investment, USCIS flagged an unaccounted-for $30,000 deposit in Opal Street's bank account. Pl.'s Ex. 3 at 3.

In May 2024, Thompson responded to the NOID. Def.'s Ex. 13 (Doc. 32-1). Thompson submitted multiple sworn statements—including one from Meloche—to demonstrate the lawful source of her investment funds and argued that she invested a substantial amount in Opal Street. *Id.*; *see, e.g.*, Def.'s Ex. 12 (Doc. 32-1); Def.'s Ex. 14 (Doc. 32-1). As for the $30,000 deposit, Thompson stated that the "funds [came] from another painting company that sought [her] advice on a large commercial painting project." Def.'s Ex. 14 ¶ 4. Thompson "provided this advice and billed for [her] time." *Id.* She believed that "this activity was permissible because it did not actually involve [her] company agreeing to do a painting project for a client." *Id.* Thompson submitted a $30,000 invoice dated May 3, 2023, and a bank record documenting a $30,000 deposit into Opal Street's account. Def.'s Ex. 17 (Doc. 32-1); Def.'s Ex. 18 (Doc. 32-1).

In July 2024, USCIS denied Thompson's petition. Def.'s Ex. 1 (Doc. 32-1). USCIS again concluded that Thompson failed to provide "a full tracing of the assets [she] used to invest in [her] business organization." *Id.* at 11. Thus, USCIS concluded that "the evidence is insufficient to determine the funds invested in the enterprise have not been obtained directly or indirectly through criminal activity." *Id.* at 12. USCIS also concluded that Thompson failed to establish that she invested, or was in the process of investing, a substantial amount of capital in Opal Street. *Id.* at 12–16. Finally, because Thompson submitted evidence that she received a consulting fee and a B-2 visa does not authorize work while in the United States, USCIS concluded that she was ineligible for a change of status. *Id.* at 16; *see* 8 C.F.R. § 214.1(e) (providing that an alien with a B-2 visa "may not engage in any employment" and that any "unauthorized unemployment . . . constitutes a failure to maintain status");[2] *id.* § 248.1(b) (providing, with some exceptions irrelevant here, that "a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed").

Following USCIS's decision, the plaintiffs amended their complaint and included a single count alleging that USCIS acted arbitrarily and capriciously in denying Thompson's

---

[2] As to the "failure to maintain status," the regulation references what is now 8 U.S.C. § 1227(a)(1)(C)(i), which provides that "[a]ny alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable."

5

and Pino's applications. Am. Compl. (Doc. 24) ¶ 21. Thompson now seeks an order enjoining DHS from finding that she is unlawfully present in the United States while this litigation is pending. MPI at 2. Otherwise, Thompson argues, if she remains in the United States beyond January 7, 2025, she will be considered inadmissible to the United States for a period of three years. *Id.*; *see* 8 U.S.C. § 1182(a)(9)(B)(i)(I).

## II.   LEGAL STANDARD

To demonstrate entitlement to a preliminary injunction, a movant must establish (1) "a substantial likelihood of success on the merits;" (2) "irreparable injury" without an injunction; (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam); *accord Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). Since a "preliminary injunction is an extraordinary and drastic remedy," a court is not to grant it "unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). Accordingly, "[f]ailure to show any of the four factors is fatal." *Am. C.L. Union of Fla., Inc.*, 557 F.3d at 1198.

## III. ANALYSIS

Because Thompson has not shown a substantial likelihood of success in bringing her APA claim, I deny her motion for a preliminary injunction barring DHS from finding her unlawfully present in the United States during the pendency of this litigation.

### A. Substantial Likelihood of Success on the Merits

The plaintiffs allege that USCIS "acted arbitrarily and capriciously" in denying Thompson's application for a change of status. Am. Compl. ¶ 21; *see* 5 U.S.C. § 706(2)(A). This standard is "exceedingly deferential," *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996), and "provides the reviewing court with very limited discretion to reverse an agency's decision," *City of Oxford v. FAA*, 428 F.3d 1346, 1352 (11th Cir. 2005). The "court's role is to ensure that the agency came to a rational conclusion, 'not to conduct its own investigation and substitute its own judgment for the administrative agency's decision.'" *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (quoting *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996)). In other words, the reviewing court "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Thus, to pass the arbitrary-and-capricious test, the agency action must "be reasonable and reasonably explained." *Id.* An agency action may be arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see Tackitt v. Prudential Ins. Co. of Am.*, 758 F.2d 1572, 1575 (11th Cir. 1985) ("A finding that a decision was arbitrary or capricious requires us to find no rational basis for the decision.").

The Secretary of Homeland Security, subject to exceptions irrelevant here, "may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status." 8 U.S.C. § 1258(a). If an alien fails to maintain status, then she is ineligible for a change of status. *See* 8 C.F.R. § 248.1(b) (explaining that "a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed," unless certain exceptions are met). An

alien on a B-2 visa fails to maintain status when she "engage[s] in any employment." *Id.* § 214.1(e).

Thompson seeks a status change from an expired B-2 visa to an E-2 visa. Under federal law, an E-2 visa is available to an "alien entitled to enter the United States under and in pursuance of the provisions of a treaty of commerce and navigation between the United States and the foreign state of which the alien is a national" if she is seeking entry "solely to develop and direct the operations of an enterprise in which the alien has invested, or of an enterprise in which the alien is actively in the process of investing, a substantial amount of capital." 8 U.S.C. § 1101(a)(15)(E). An "investment" is defined as the alien's "placing of capital, including funds and other assets (which have not been obtained, directly or indirectly, through criminal activity), at risk in the commercial sense with the objective of generating a profit." 8 C.F.R. § 214.2(e)(12). A "substantial amount of capital" is defined as an amount of capital which is:

(i) Substantial in relationship to the total cost of either purchasing an established enterprise or creating the type of enterprise under consideration;
(ii) Sufficient to ensure the treaty investor's financial commitment to the successful operation of the enterprise; and
(iii) Of a magnitude to support the likelihood that the treaty investor will successfully develop and direct the enterprise.

9

*Id.* § 214.2(e)(14). An applicant for an E-2 visa must demonstrate her eligibility by a preponderance of the evidence. *See In re Chawathe*, 25 I. & N. Dec. 369, 375 (USCIS Admin. Appeals Off. 2010).

As discussed, USCIS listed three reasons for denying Thompson's petition: (1) she failed to sufficiently trace the invested funds to a lawful source; (2) her investment is not substantial; and (3) she is ineligible to apply for a change of status because she failed to maintain B-2 status by engaging in unauthorized employment. The plaintiffs did not address the third basis in their complaint. *See* Mot. to Dismiss (Doc. 25) at 8 ("While Plaintiffs address the first two bases of denial in their amended complaint, they did not mention the third basis of denial, namely Plaintiff Thompson's failure to maintain her B-2 nonimmigrant status due to unauthorized employment."). In the motion for a preliminary injunction, Thompson relegates her discussion of the third basis to a footnote. Thompson argues that her employment—which involved accepting a $30,000 consultancy fee—did not violate her status "because it did not involve her company actually providing painting services to a customer." MPI at 14 n.1.

Thompson has not shown a substantially likelihood of success because USCIS likely did not err in concluding that Thompson failed to maintain B-2 status. On May 3, 2023, when Opal Street issued a $30,000 invoice to Sarasota2013 LLC/CertaPro Painters of St. Petersburg & Bradenton North, *see* Def.'s Ex. 17, Thompson was not allowed to "engage

in any employment" under her B-2 visa, 8 C.F.R. § 214.1(e). Thompson provides no support for the proposition that providing advice to another company as to a large commercial painting project does not qualify as "employment" for the purposes of § 214.1(e). The two sources of authority that Thompson cites do not support her position. The first—22 C.F.R. § 41.31(b)(1)—merely defines "business" for the purpose of the B-1 visa, not the B-2 visa that Thompson held. The second—9 Foreign Affairs Manual §402.2-5(C)(7)—provides that an applicant "seeking investment in the United States, including an investment that would qualify them for status as an E-2 nonimmigrant investor, is not ineligible for a B visa on that basis alone." The same provision states that "[a]pplicants seeking investment, like all B-1/B-2 travelers, are precluded from performing productive labor or from actively participating in the management of the business while in the United States in B status." *Id.; see* AUSTIN T. FRAGOMEN, JR., ET AL., IMMIGRATION PROCEDURES HANDBOOK § 1.10 (Dec. 2024 update) ("Productive employment includes both salaried work for an employer and services for hire on an independent basis (independent contractors or freelancers)." (emphasis omitted)). When read as a whole, this provision from the Foreign Affairs Manual does not stand for the proposition that a B-2 traveler may work as a consultant like Thompson did.

 Thompson argues that I may "decide the substantive issues relating to her eligibility for E-2 status aside from whether she may change her nonimmigrant status, and remand

11

to the agency to consider her reasons why she remains eligible to change her status without having to leave the U.S. and seek reentry." MPI at 14 n.1. Remand would be justified, Thompson says, because "USCIS raised this objection only in its denial without giving [her] an opportunity to explain." *Id.* Although Thompson is correct that USCIS offered this basis for the first time in its final decision denying her application, she does not explain how this procedural posture affects the question of whether she has a substantial likelihood of success on the merits in challenging USCIS's decision. Thompson does not argue that USCIS's decision is unlawful because it "raised this objection . . . without giving [her] an opportunity to explain." *Id.* Also, as discussed, Thompson does not convincingly argue that she is eligible for a change of status despite her work as a consultant.

Even if I agree with USCIS that Thompson is ineligible for a change of status, Thompson argues that I "may still declare USCIS's ineligibility conclusion unlawful, which will aid [her] in seeking an E-2 visa at a U.S. consulate abroad." *Id.* But the objective of Thompson's lawsuit as stated in the amended complaint is not merely declaratory relief. Rather, Thompson primarily seeks an order vacating USCIS's decision and directing USCIS to grant her an E-2 visa. Am. Compl. at 6. She will not be successful in that endeavor without proving that USCIS erred in concluding that she is ineligible for a change of status.

This argument is also at odds with Thompson's theory of irreparable harm. Thompson argues that, absent a preliminary injunction, she "will have to choose between abandoning her application for a change of status and accumulating unlawful presence." MPI at 14. If Thompson is unsuccessful in her challenge to USCIS's denial of her application, she contends that she will be barred from reentry for at least three years because of the unlawful presence she has accumulated. *Id.*; *see* 8 U.S.C. § 1182(a)(9)(B). But "if she leaves the United States before the litigation concludes to avoid that consequence, then USCIS will deem her application for a change of status abandoned, depriving her of [her] opportunity to obtain a change of status." *Id.* at 14–15. If Thompson no longer challenges USCIS's determination that she is ineligible for a change of status, though, then she will have to return abroad to apply for an E-2 visa. *See* FRAGOMEN, ET AL., IMMIGRATION PROCEDURES HANDBOOK § 4.31 ("Persons who are out-of-status at the time of filing the change of status application must apply for an E nonimmigrant visa abroad (unless they are able to demonstrate extraordinary circumstances justifying approval of a late change of status application as indicated above)."). In other words, if all Thompson seeks is declaratory relief as to her eligibility for an E-2 visa so that she can apply at a U.S. consulate abroad, then her stated need for a preliminary injunction falls away.

In all, Thompson has not demonstrated that she has a substantial likelihood of success on the merits in challenging USCIS's conclusion that she is ineligible for a change

13

of status due to her unauthorized labor. Therefore, even if Thompson could demonstrate a substantial likelihood of success on the merits in challenging the other two reasons offered by USCIS, she is not entitled to a preliminary injunction. *See Am. C.L. Union of Fla., Inc.*, 557 F.3d at 1198 ("Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits.").

## IV. CONCLUSION

Thompson has failed to show that she has a substantial likelihood of success on the merits. Accordingly, the following is **ORDERED**:

1. The Motion for a Preliminary Injunction (Doc. 27) is **DENIED**.

**ORDERED** in Tampa, Florida, on December 30, 2024.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge