UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA THOMPSON,
VINCENZO PINO, and
OPAL STREET, LLC,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

    Defendant.
_____

Case No: 8:24-cv-349-KKM-AAS

## ORDER

On January 14, 2025, I directed the parties to explain whether this case is moot in the light of Victoria Thompson's representations about her need to leave the country absent injunctive relief and the effect leaving the country would have on her application for a change of status. (Doc. 43). In response, the plaintiffs argue that the case is not moot (Doc. 47), and the Department of Homeland Security (DHS) argues that the case is moot (Doc. 48). For the below reasons, I agree with DHS.

### I. BACKGROUND

Thompson and her son, Vincenzo Pino, entered the country on B-2 visas in March 2023. Am. Compl. (Doc. 24) ¶ 8. Thompson later applied to change her status to E-2

based on her investment in and ownership of Opal Street, LLC, a business she incorporated to operate a painting franchise. *Id.* ¶ 9. On the same day, Pino applied to change his status to E-2 dependent. *Id.* ¶ 10. Eventually, U.S. Citizenship and Immigration Services (USCIS) denied both applications. *Id.* ¶¶ 13, 17.

Thompson, Pino, and Opal Street initiated this action seeking review of USCIS's decisions under the Administrative Procedure Act (APA). *See id.* ¶¶ 2, 21–26. The plaintiffs seek an order vacating "DHS and USCIS's decisions denying Ms. Thompson and her son's applications to change status to E-2" and directing "USCIS to grant them E-2 status so Ms. Thompson may begin to actively manage Opal Street LLC." *Id.* at 6. The plaintiffs also seek an order enjoining "DHS and all of its subsidiary agencies from finding that Ms. Thompson has accumulated unlawful presence while this lawsuit is pending." *Id.* Finally, the plaintiffs request "such other relief, including injunctive relief, attorney fees, and costs of this action, as may be just, lawful, and equitable." *Id.*

DHS moved to dismiss. Mot. to Dismiss (MTD) (Doc. 25). In accord with the second request for relief, the plaintiffs moved for a preliminary injunction, asking the Court to enjoin DHS from "finding that [Thompson] accumulated unlawful presence while this litigation is pending." Mot. for Prelim. Inj. (MPI) (Doc. 27) at 16. In the motion, the plaintiffs represented that, if Thompson left the United States to avoid the accrual of unlawful presence before the litigation concludes, USCIS "will deem her application for a

2

change of status abandoned." *Id.* at 14; *see* Pls.' Reply (Doc. 37) at 13 ("[I]f Ms. Thompson leaves the United States, she will incur another injury—loss of her ability to change her status.").

Because the plaintiffs failed to demonstrate a substantial likelihood of success on the merits, the motion for a preliminary injunction was denied. Prelim. Inj. Order (PI Order) (Doc. 39). Thompson then left the country. *See* Pls.' Br. on Mootness (Doc. 47) at 1; Def.'s Ex. A (Doc. 48-2) at 3 (stating that Thompson departed the United States on January 6, 2025). About two weeks later, Thompson re-entered the United States with a new B-2 visa. Def.'s Ex. A. at 3. The plaintiffs now seek to continue litigating their challenge to USCIS's denials of the applications for change of status. (Doc. 47).

## II. LEGAL STANDARD

"The Constitution grants federal courts jurisdiction to decide 'Cases' or 'Controversies.'" *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024) (quoting U.S. CONST., art. III, §§ 1, 2). "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "If events that

3

occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed." *Al Najjar*, 273 F.3d at 1336. In other words, for a case not to be moot, a federal court must be able to "provide redress in some palpable way." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). To determine whether a case is moot, a court must consider each form of relief that the plaintiff seeks. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1283–86 (11th Cir. 2024).

## III. ANALYSIS

Due to changed circumstances, the plaintiffs' requested relief will not provide redress. In the amended complaint, the plaintiffs ask the Court to vacate the decisions denying the applications to change status, order USCIS to grant Thompson and Pino E-2 status, and enjoin DHS and all its subsidiary agencies from finding that Thompson has accumulated unlawful presence while litigating this lawsuit. Am. Compl. at 6. The plaintiffs also ask the Court to grant all "other relief, including injunctive relief, attorney fees, and costs of this action, as may be just, lawful, and equitable." *Id.* With respect to the last request, the " 'mere incantation of such boilerplate language' cannot change the nature of relief sought," *Warren v. DeSantis*, No. 23-10459, 2025 WL 63486, at *1 n.1 (11th Cir. Jan. 10, 2025) (per curiam) (quoting *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1526 n.12 (11th Cir. 1994)), so I will focus on the two enumerated requests for relief, *see Culley v.*

4

*Marshall*, 601 U.S. 377, 384 n.1 (2024) (focusing on the "requested relief" in determining whether a case is moot); *see also Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 397 (5th Cir. 2000) (refusing to consider "imagined possibilities beyond those requested in the complaint" (quoting *Harris v. City of Houston*, 151 F.3d 186, 190 (5th Cir. 1998)).

Given the changed circumstances, none of the requested relief will "provide redress [to the plaintiffs] in some palpable way." *Gagliardi*, 889 F.3d at 733. Therefore, the case is moot. Starting with the request for reversal of USCIS's decisions to deny the applications for change of status, the parties do not disagree that, by leaving the United States, Thompson abandoned her application. Although DHS previously suggested that Thompson could continue this litigation after departing the United States, Resp. to Pl.'s Mot. for Prelim. Inj. (Doc. 32) at 25, DHS now states that this statement is "inadvertently inaccurate" and argues that Thompson's "departure on January 6, 2025, constitutes an abandonment of the I-129 change of status request," Def.'s Br. on Mootness (Doc. 48) at 6–8. Even though the plaintiffs cite DHS's previous representation, they too recognize that Thompson will need to file "a new change of status application." Pls.' Br. on Mootness (Doc. 47) at 1–2. This is in line with the plaintiffs' previous position that an applicant abandons an application for change of status upon leaving the United States. *See* MPI at 14–15; Pls.' Reply at 13–14.

5

Longstanding governmental policy—which the plaintiffs do not challenge—supports the parties' shared position. In 2001, an Immigration and Naturalization Service official authored a memorandum providing that an alien "abandon[s]" an application for a change of nonimmigrant status if the alien "travels outside the United States before the request is adjudicated." Memorandum from Thomas Cook, Acting Assistant Comm'r, Off. of Programs to All Serv. Ctr. Dirs., All Dist. Dirs., All Officers-in-Charge (June 18, 2001), https://perma.cc/Z4Y2-PXQZ. Therefore, the memorandum continued, an application should be denied "[i]f at any time it comes to the attention of the Service that an alien on whose behalf a request for a change of nonimmigrant status has been filed has travel[ed] outside of the United States during the pendency of the request for a change of status." *Id.*; *see* Pls.' Reply at 14 (citing the Cook memorandum); *Curva v. United States Citizenship & Immigr. Servs.*, No. CV 09-06086 DDP (EX), 2010 WL 11530932, at *7 n.5 (C.D. Cal. Jan. 11, 2010) ("USCIS requires an alien seeking adjustment of status to remain in the United States or abandon her application."); AUSTIN T. FRAGOMEN, JR., ET AL., IMMIGRATION PROCEDURES HANDBOOK § 1.28 (Dec. 2024 update) ("An individual on whose behalf a change of status application has been filed and who travels outside the United States before the request is adjudicated is considered to have abandoned the application. As a result, the application should be denied. This has been the agency's long-standing policy on the issue."); *id.* § 4.29 (same).

For the above reasons, Thompson has abandoned her application for a change of status.[1] This changed circumstance moots the case. In the amended complaint, the plaintiffs request vacatur of USCIS's decisions and an order directing USCIS to grant the applications for a change of status. But this request for relief would no longer result in a change to Thompson's and Pino's immigration statuses. To start, vacatur only operates to render agency action a "nullity." *United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring in the judgment). Vacatur of the orders denying the change of status applications would not restrain USCIS officials in potential future proceedings. *See id.* Even though the plaintiffs may find value in a court order opining on the merits of USCIS's decisions, "[i]t is a federal court's judgment, not its opinion, that remedies an injury," and "thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). Therefore, even though the plaintiffs argue that "the harm caused by the defendant's denial of Ms. Thompson's E-2 petition is ongoing," Pl.'s Br. on Mootness at 3, they fail to explain how vacatur will remedy that harm.

Next, even if USCIS erred in denying Thompson's and Pino's applications, there are no longer active applications for USCIS to grant. *See* Def.'s Br. on Mootness at 6 (explaining that even if this Court remanded this case, "USCIS could not approve Plaintiff

---

[1] The plaintiffs do not suggest that Pino's application—dependent on Thompson's—is not abandoned. *See* Am. Compl. ¶ 10.

Thompson's change of status request or the E-2 treaty investor petition"). As the plaintiffs admit, regardless of my decision, Thompson will have to begin an entirely new process to seek an E-2 visa. *See* Pls.' Br. on Mootness at 2. Therefore, an order directing USCIS to grant Thompson's and Pino's old applications would not provide redress to the plaintiffs.

The requested injunctive relief concerning Thompson's accrual of unlawful presence is also futile. Because Thompson is now in the country with a new B-2 visa, *see* Def.'s Ex. A at 3, she is no longer unlawfully present. As a result, the requested injunction will not provide "meaningful relief" to Thompson. *Al Najjar*, 273 F.3d at 1336.

In sum, even if I agreed with the plaintiffs on the merits, the "relief sought by the [plaintiffs]" would no longer be "effective." *Gagliardi*, 889 F.3d at 733. This means that the case—based on the remedies that the plaintiffs requested—is moot.

## IV. CONCLUSION

Because Thompson left the country, she abandoned her application for a change of status. She is now in the country lawfully under a new B-2 visa. Accordingly, the plaintiffs' requested relief in the amended complaint will no longer redress their harm, and the plaintiffs' APA claim is moot. This action must therefore be dismissed for a lack of jurisdiction. *See Al Najjar*, 273 F.3d at 1336 ("[D]ismissal is required because mootness is jurisdictional.").

Accordingly, the following is **ORDERED**:

1. This action is **DISMISSED** without prejudice for a lack of jurisdiction.

2. The Clerk is directed to enter judgment, which shall read "This case is dismissed without prejudice," terminate any pending motions and deadlines, and **CLOSE** this case.

**ORDERED** in Tampa, Florida, on February 6, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge